```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION

BRIAN FALLS, etc.,                )
                                  )
          Plaintiff,              )
                                  )
     v.                           )     No.  13 C 695
                                  )
SILVER CROSS HOSPITAL AND         )
MEDICAL CENTERS, etc.,            )
                                  )
          Defendant.              )
```

<u>MEMORANDUM OPINION AND ORDER</u>

Silver Cross Hospital and Medical Centers ("Silver Cross") has filed a Fed. R. Civ. P. ("Rule") 12(b)(6) motion to dismiss the putative Class Action Complaint brought against it by Brian Falls ("Falls"), and its motion has now been fully briefed by the parties and is accordingly ripe for decision. In this instance this Court confronts the unusual situation in which different Illinois Appellate Courts, neither sitting in the Appellate District that is the situs of this lawsuit, have reached decisions of opposite polarity--so that the familiar turn of phrase, under which the function of a federal court in a diversity action is described as predicting how the Illinois Supreme Court would resolve the issue if confronted by it, states the applicable rule of decision in bold relief.

<u>Factual Background</u>

Falls was provided medical services rendered by Silver Cross to deal with injuries that he had sustained in an automobile accident in which the other party involved was guilty of

negligence--negligence that triggered a lawsuit against that tortfeasor that eventuated in an $85,000 settlement paid for by the tortfeasor's insurer. Falls was covered by health insurance written by United HealthCare Insurance Company ("United"), which in turn had earlier entered into a December 1, 2010 detailed and comprehensive Facility Participation Agreement (the "Agreement") with Silver Cross.[1]

This opinion's earlier reference to the Agreement as "detailed and comprehensive" was not at all hyperbolic: Its text (exclusive of the signature page and six pages of Appendices) comprises 14 closely-packed single-spaced provisions printed in a type font considerably smaller than the 12 point type in which this opinion is written (as an eyeball estimate, rather than by actual measurement, the Agreement looks to be set in 8 point type). And it was negotiated between sophisticated contracting parties--United and Silver Cross (which is defined as the "Facility" under the Agreement). Here, then, is the relevant language from the key sections of the Agreement:

> **6.7 Payment Under This Agreement is Payment in Full.** Payment as provided under section 6.4, together

---

[1] For some inexplicable reason, neither side's counsel had seen fit to deliver a copy of that document to this Court, although its potential relevance became obvious to this Court on reading the parties' submissions. Sure enough, when counsel responded to this Court's request by delivering a copy of the Agreement to this Court's chambers, it proved to be extraordinarily relevant--indeed, really dispositive--as the ensuing discussion explains.

with any co-payment, deductible or coinsurance for which the Customer [here, Falls] is responsible under the Benefit Plan, is payment in full for a Covered Service. Facility will not seek to recover, and will not accept, any payment from the Customer, United, Payer or anyone acting in their behalf, in excess of payment in full as provided in this section 6.7, regardless of whether such amount is less than Facility's billed charge or Customary Charge.

\* \* \*

**6.8 Customer "Hold Harmless."** Facility will not bill or collect payment from the Customer, or seek to impose a lien, for the difference between the amount paid under this Agreement and Facility's billed charge or Customary Charge....

\* \* \*

**6.9 Consequences for Failure to Adhere to Customer Protection Requirements**. If Facility collects payment from, brings a collection action against, or asserts a lien against a Customer for Covered Services rendered (other than for the applicable co-payment, deductible or coinsurance), contrary to Section 6.7 or 6.8 of this Agreement, Facility shall be in breach of this Agreement. This section 6.9 will apply regardless of whether Customer or anyone purporting to act on Customer's behalf has executed a waiver or other document of any kind purporting to allow Facility to collect such payment from Customer.

In accordance with those provisions of the Agreement, Silver Cross billed United, and was paid, the sum of $5,957.15 to cover the total cost of Falls' treatment at the hospital from the March 6, 2011 date of the automobile accident through March 8, the date Falls was discharged from the hospital. That amount was "payment in full" for Silver Cross' services (section 6.7), barring it from billing or collecting payment from Falls or from seeking to impose a lien for the difference between that amount and Silver

Cross' "billed charge or Customary Charge" (section 6.8). Yet three weeks later Silver Cross asserted a Notice of Hospital Lien purporting to amount to $18,129.50 "on any money due or owing on any claim or causes of action for compensation, damages, contributions, settlements or judgment from <u>ANY PERSON OR INSURANCE COMPANY LIABLE</u> who is alleged to have caused the injuries and to be liable therefore [sic]."

Falls' lawsuit challenges Silver Cross' right to do so. And as the predicate for bringing the lawsuit in this federal court, he seeks to invoke the special provisions of the Class Action Fairness Act ("CAFA," 28 U.S.C. §1332(d)) on the bases (1) that some members of the putative class who have been treated similarly are not Illinois citizens (Silver Cross' corporate citizenship is Illinois-based) and (2) that the total amount in controversy on the part of the putative class members exceeds $5 million.[2]

---

[2] Because Silver Cross first sought to challenge the Complaint on the ground dealt with in this opinion, when this Court set the date for Falls' response to the Rule 12(b)(6) motion it granted orally Silver Cross' contemporaneous Motion To Stay Discovery. But if CAFA proves to be inapplicable in amount-in-controversy terms, the absence of diversity of citizenship between Silver Cross and Falls (who is also an Illinois citizen) would call for dismissal of this action for lack of subject matter jurisdiction. That of course is a threshold issue (see such cases as <u>Cook v. Winfrey</u>, 141 F.3d 322, 325 (7th Cir. 1998)), and with the Complaint having withstood Silver Cross' initial onslaught for the reasons hereafter stated in this opinion, counsel for the parties will be expected to discuss, at the previously scheduled status hearing on June 5, the timing and procedure for examining the jurisdictional issue.

### Illinois Caselaw

Silver Cross' motion to dismiss relies on the Illinois Health Care Services Lien Act ("Lien Act," 770 ILCS 23/10) and the decision of the Illinois Appellate Court for the Fourth District in Rogalla v. Christie Clinic, P.C., 341 Ill.App.3d 410, 794 N.E.2d 384 (4th Dist. 2003). For his part, Falls points to two decisions by the Illinois Appellate Court for the Second District: one in N.C. ex rel. L.C. v. A.W. ex rel. R.W., 305 Ill.App.3d 773, 713 N.E.2d 775 (2d Dist. 1999)(a case that preceded Rogalla and whose analysis was rejected by the latter case), and the other in a post-Rogalla case, Lopez v. Morley, 352 Ill.App.3d 1174, 817 N.E.2d 592 (2d Dist. 2004)(which in turn looked at what the Fourth District had done and rejected it in favor of adhering to N.C.). Because, as stated earlier, this Court now has the benefit of access to the controlling contractual document in this case, it is unnecessary to spend additional time and space parsing those competing decisions.[3]

### Applicability of the Lien Act

Here is the basic substantive scope of the Lien Act, as set

---

[3] It must be said, though, that Rogalla really looked at an issue different from the one posed here. What the court considered there was whether the Lien Act extended not only to direct charges for medical services provided by the health provider itself but also to amounts that the health provider had laid out to third-party health care providers for services that they had rendered to the plaintiff. Even so, the fact remains that the two Illinois Appellate Courts did construe the Lien Act differently.

5

out in 770 ILCS 23/10(a):

> Every health care professional and health care provider that renders any service in the treatment, care, or maintenance of an injured person, except services rendered under the provisions of the Workers' Compensation Act or the Workers' Occupational Diseases Act, shall have a lien upon all claims and causes of action of the injured person for the amount of the health care professional's or health care provider's reasonable charges up to the date of payment of damages to the injured person.

It is of course noteworthy that the Lien Act provides hospitals such as Silver Cross with a <u>remedy</u>--it protects them from being stiffed in a situation such as was presented by Falls, a stranger with whom Silver Cross had no relationship but who came in for emergency treatment after being injured in an accident. But in doing so the Lien Act does not quantify the amount of the lien, referring instead only to the hospital's "reasonable charges."

Thus Silver Cross cannot bootstrap itself, as its Notice of Hospital Lien sought to do, by asserting:

> The said Silver Cross Hospital has demanded for care and/or services to date the sum of $18,129.50, in which amount a lien is hereby under [sic] the Health Care Services Lien Act, 770 ILCS 23, et al., which is hereby incorporated by reference in this hospital lien.

Indeed, the statement that such larger amount has been "demanded for care and/or services to date" flies directly in the face of the earlier-quoted provisions from its Agreement with United (1) that the sum of less than $6,000 payable under the Agreement "is payment in full for a Covered Service" and (2) that Silver Cross "will not seek to recover, and will not accept, any payment

6

from Customer, United, Payor or anyone acting in their behalf, in excess of payment in full as provided in this section 6.7, regardless of whether such amount is less than Facility's billed charge or Customer Charge."

It is a pure solecism for Silver Cross' counsel to claim, "Oh, we're not seeking to recover any payment from Falls as our Customer--our lien is attached to the funds, the proceeds of settlement, not to Falls' money." Its counsel have forgotten, or more likely have chosen to ignore, the fundamental nature of a lien. It is not, as their position assumes, a "brooding omnipresence in the sky" (Justice Oliver Wendell Holmes, dissenting in <u>Southern Pacific Co. v. Jensen</u>, 244 U.S. 205, 222 (1917)) that somehow exists wholly detached from some individual or other legal entity, so that the ownership of the property sought to be levied on can be disregarded. As the Illinois Appellate Court for the First District has stated in <u>Compton v. Country Mut. Ins. Co.</u>, 382 Ill.App.3d 323, 329, 887 N.E.2d 878, 885 (1st Dist. 2008), confirming a basic truth taught in every law school:

> The term "lien" is defined as "[a] legal right or interest that a creditor has in another's property, lasting usu. until a debt or duty that it secures is satisfied." <u>Black's Law Dictionary</u> 933 (7th ed. 1999).

To place that fundamental concept into the matrix of this case, when Falls settled his lawsuit with the tortfeasor whose negligence had injured him, he acquired an entitlement to the

7

payment of $85,000--an account receivable, if you will. It is only to that property interest that any lien sought to be asserted by Silver Cross can attach--and Silver Cross has expressly contracted that it has no claim against Falls or any of his property, for it has been "paid in full." It cannot be gainsaid that if Silver Cross' purported lien claim were to be upheld, it would be taking $12,000 directly out of Falls' pocket.

This Court will not indulge the fiction advanced by Silver Cross and its counsel. Their Rule 12(b)(6) motion is denied.

_____
Milton I. Shadur
Senior United States District Judge

Date: May 15, 2013